IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* <br><br> ADI Liquidation, Inc. (f/k/a AWI Delaware, Inc.), et al., <br><br><br> Debtors | Chapter 11 <br> Case No. 14-12092 (KJC) <br><br> (Jointly Administered) <br><br> RE: D.I. 1821 <br><br> Hearing Date: April 30, 2015 @ 2:00 pm <br> Obj. Deadline: March 30, 2015 @ 12:00 pm |

**OBJECTION BY THE KRAFT ENTITIES TO JOINT MOTION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS REGARDING OFFSET OF TRADE CREDITS, ETC.**

Kraft Food Group, Inc. and Churny Company, Inc. (collectively and together with certain of their affiliates, the "Kraft Entities") hereby object to the *Joint Motion of the Debtors and the Official Committee of Unsecured Creditors for Entry of an Order (I) Authorizing the Debtors to Offset Trade Credits, Vendor Overpayments and/or any Other Amounts Owed to the Debtors First Against the Administrative or Secured Portion of Creditors' Claims; and (II) Disallowing Claims for Post-Petition Interest in Connection with Claims Asserted Under 11 U.S.C. § 503(b)(9)* (D.I. 1821) (the "Joint Offset Motion"). In support of their objection, Kraft Entities state as follows:

1. There are numerous legal arguments advanced in other objections by similarly situated creditors. In the interest of judicial economy, the Kraft Entities will not restate the same arguments here but rather join and incorporate by reference those objections which are relevant. This objection will focus on points not yet raised by others and on factual circumstances particular to the Kraft Entities as individual creditors.

2.     The Kraft Entities sell various consumer goods to certain of the Debtors and engage in customary industry practices regarding sales incentives, marketing allowances and the like. At the time of the filing of the cases, there were various obligations outstanding between the Kraft Entities and certain of the Debtors. In the normal course of business and in accordance with applicable law, the Kraft Entities and affiliates and the Debtors routinely reconciled amounts due to and from each other in a variety of ways, including setoff and recoupment.

3.     The Kraft Entities filed an objection to the sale to the extent that the Debtors sought to sell any Debtor assets that may be subject to any rights of setoff or recoupment of the Kraft Entities free and clear of such rights. More than 20 other creditors filed similar objections. These objections were resolved by an amendment to the Sale Order to protect the Kraft Entities and all other similarly situated creditors with respect to their rights to these setoff and recoupment to ensure that they were able to realize the full value of any such rights without prejudice to the rights of the estate to the same protection. *See* Insert A to the Sale Order [D.I. 614-1]. The Joint Offset Motion appears designed to contradict and circumvent that previously granted relief.

**The application of offset rights should be dictated by the nature of the "debt owed".**

4.     The movants rely upon a single case where the Court deemed it appropriate and equitable to allow the estate to offset actual, liquidated debts owed to the Debtor against unrelated administrative priority claims asserted by the same obligor after a factually-based inquiry as to the nature of the debts. *See In re PSA, Inc.*, 277 B.R. 51 (Bankr. D. Del. 2002). They then proceed to cite several cases reaching a similar conclusion after a similar inquiry. The movants then, however, attempt to extrapolate those holdings to justify the extraordinary position that any claim of a Debtor for "any other amount owed" is always to be offset against the highest priority claim of that creditor against the estate, without regard to the nature of the competing claims, the validity of said claims,

nor the equity of such setoff, even though the cases cited lean heavily on the principal of equitable treatment of all creditors. The case law cited simply does not stand for that proposition. Nor is any legal authority provided to support such a profound expansion of that concept.

5. The case that the movants most heavily rely upon repeatedly harkens back to the bedrock principal of "fair and equitable treatment of all creditors" as the guiding justification for its ruling, as does the Joint Offset Motion itself. That same fundamental principal suggests that the relief requested here is inappropriate, as fair and equitable treatment can only be determined in the context of comparing the "debt owed" to the estate with the claim against which it seeks to offset.

6. The Joint Offset Motion seeks to allow offset for three groups of "debts owed," namely the specifically defined Vendor Overpayments and Trade Credits as well as the catch-all Other Amounts for "any other amount owed." These various categories of "debts owed" are quite different, and circumstances can and do exist that highlight how inequitable it would be for some of them to be offset entirely against higher priority claims. A refund for overpayment, for instance, is clearly a right of the estate arising out of a debt actually paid by the Debtor. That is a very different scenario than a Trade Credit which is a promotion or volume discount which arises based on orders placed of a certain quantity within a certain timeframe. If the invoice[s] giving rise to such a Trade Credit remained unpaid as of the petition date and is therefore now a part of a general unsecured claim, it is questionable whether it is a "debt owed" at all, but certainly should not be applied entirely against a claim based on an invoice of a higher priority, such as a post-petition or 503(b)(9) qualified administrative claim. The simple analogy is a consumer who presents a coupon for 50 cents off to a store and demands 50 cents in cash without bothering to pay for the product.

7. At the very least, if the Court requires that the estate reconcile Trade Credits so that they are only applied to offset claims of a similar level of priority from which they arose, then the "coupon" is only applied when they actually purchase the product, which is the only reasonable and equitable application.

8. Even more equitable would be to hold that a Trade Credit, when predicated upon "promotions, volume discounts, advertising and warehouse allowances, rebates or similar refunds" (the definition of Trade Credits in the Joint Offset Motion) should not have to be honored when it isn't deserved because of non-payment or significant delay in payment. In seeking to offset Trade Credits at all, the estate is seeking a discount offered by its vendors for buying a certain amount of goods within a certain timeframe (which is essentially what all of these Trade Credits are). That offer from each vendor comes with a reasonable presumption of timely payment expected for orders placed within that timeframe. If timely payment doesn't occur, the benefit of the incentive is not realized for the vendor and therefore ought not still flow to the Debtor.

9. Further highlighting the propriety of the Kraft Entities position with respect to only applying the Trade Credits, if at all, to claims of a similar priority, are the provisions in the Sale Order regarding recoupment [D.I. 614, Insert A, para. 49]. The Recoupment Rights held by the Kraft Entities (and all other creditors) were expressly preserved against the estate. The Debtor likely will seek to offset a particular Trade Credit against an unrelated invoice, if it is part of a higher priority claim, such as via 503(b)(9). However, if that particular Trade Credit arises from an unpaid invoice that is not part of the 503(b)(9) claim, but rather is part of the general unsecured claim, then the Kraft Entities would have the right to recoup that general unsecured claim invoice against that particular Trade Credit. Where such a right exists, the creditors right to so recover trumps the estate's right to offset against a different invoice - the right to do so was expressly

preserved in the Sale Order as part of a negotiated resolution of objections. Of course, this is only applicable upon a determination that the Trade Credit is owned by the estate, and was not transferred to C&S as part of the sale (addressed below).

**The Motion overstates the Debtors' right to exercise recoupment.**

10. The Joint Offset Motion somewhat extraordinarily and mistakenly asserts that the Debtor may assert rights of recoupment against creditor claims even if the ownership of "Credits" is determined to have passed to C&S. This position fails for three reasons. First, it is an explicit example of the estate attempting a "double recovery" against creditors which it has expressly disavowed attempting to do. Second, if C&S is the rightful owner of any Trade Credits, then it must necessarily not be a "debt owed" to the Debtor, and therefore the element of mutuality of debt for the right of recoupment is missing. Third, the Joint Offset Motion misrepresents the Sale Order, which states that the "Sale … shall not be free and clear of [Recoupment Rights] that any party has … against the Debtors or their estates…" *See* Sale Order at Insert A, para. 49 [D.I. 614-1]. The Sale Order does not preserve the Debtors recoupment rights, only those against the Debtor held by creditors.

**The Motion is the wrong procedure to challenge proofs of claim.**

11. The Kraft Entities made clear in their filed proofs of claim which Trade Credits apply to general unsecured claims and which Trade Credits apply to administrative priority claims, if and only if the ownership of Trade Credits is determined to belong to the estate. There should not be any question, given the filing of a presumptively valid proof of claim so indicating, about where the credits should be offset absent a properly filed claim objection. As stated more fully in the objection of Berks Packing to the Joint Offset Motion [D.I. 1910, paras. 5-8], which argument

is incorporated by reference herein, the attempt to circumvent the claims objection procedure is a deprivation of the Kraft Entities' due process rights.

### **The relief requested is premature until ownership of Trade Credits is resolved.**

12. The Kraft Entities have continued to transact business with the purchaser of estate assets, C&S, subsequent to the sale, and they have already received notice of application of certain offset rights purportedly obtained by C&S as part of the sale of Debtors' assets. The amount and extent of the offsets taken is being reconciled and future similar offsets are expected, but this certainly raises the concern that the relief sought in the Joint Offset Motion, if granted, could constitute a double "payment" of these obligations by the Kraft Entities. This despite the express statements of both estate and C&S representatives that such an outcome was not intended.

13. To come to a resolution over the relief requested in the Joint Offset Motion prior to determining if such rights are even owned by the estate could constitute severe waste of estate assets litigating a moot issue. Given the actions of C&S to begin applying offsets purportedly obtained in the sale of estate assets, it appears the resolution of ownership of the various offset rights for Vendor Overpayments, Trade Credits and Other Amounts is the more pressing threshold issue and needs to be resolved.

WHEREFORE, the Kraft Entities respectfully request that the Court deny the relief requested in the Joint Offset Motion and grant the Kraft Entities such other and further relief as may be appropriate under the circumstances.

Dated: March 30, 2015
Wilmington, DE

GELLERT SCALI BUSENKELL & BROWN, LLC

*/s Michael Busenkell*
Mike Busenkell (DE Bar No. 3933)
913 N. Market St., 10th Floor
Wilmington, Delaware 19801
Telephone: (302) 425-5812

*Local Counsel for the Kraft Entities*

HAMILTON STEPHENS STEELE
+ MARTIN, PLLC

*/s/ Glenn C. Thompson*
Glenn C. Thompson (NC Bar No. 37221)
201 South College Street
Charlotte Plaza, Suite 2020
Charlotte, North Carolina 28244-2020
Telephone: (704) 344-1117

*Lead Counsel for the Kraft Entities*