# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ADI Liquidation, Inc. (f/k/a AWI Delaware, Inc.), *et al.*,[1]<br><br>　　　　　　　　　　　Debtors. | CHAPTER 11<br>(Jointly Administered)<br><br>Case No. 14-12092 (KJC)<br>(D.I. 2902) |

## OPINION OVERRULING OBJECTION TO CLAIM OF MARK R. MANGAN[2]

### BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

Before the Court is the Debtors' Eighth Omnibus (Substantive) Objection to Employee Claims (D.I. 2902) (the "Objection"),[3] which includes an objection to proof of claim number 1825 ("POC 1825" or the "Claim") filed by Mark R. Mangan ("Mangan"). Mangan filed POC 1825 as a priority claim under Bankruptcy Code § 507(a)(4) for unpaid wages (severance pay) in the amount of $8,693.70. Mangan also requests payment of his severance claim in a lump sum distribution. The Debtors contend that the Claim should be reclassified as a general unsecured claim.

In his response to the Objection (D.I. 2941) (the "Response"), Mangan opposed reclassification of his claim, arguing that he continued to provide services to the Debtors post-

---

[1] The Debtors in these chapter 11 cases are: AWI Delaware, Inc.; Associated Wholesalers, Inc.; Nell's, Inc.; Co-Op Agency Inc.; Associated Logistics, Inc.; White Rose Inc.; Rose Trucking Corp.; WR Service Corp.; WR Service II Corp.; WR Service V Corp.; and White Rose Puerto Rico, LLC.

[2] This Opinion constitutes the findings of fact and conclusions of law, as required by Fed. R. Bankr. P. 7052. This Court has jurisdiction to decide this claim objection pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Venue is proper in this judicial district under 28 U.S.C. §§ 1408 and 1409.

[3] Debtors' Eighth Omnibus (Substantive) Obj. to Employee Claims (Duplicative, Improperly Asserted, No Liability and Reclassified Claims) and Mot. for Entry of an Order Authorizing and Directing Debtors' Claims Agent to Mark Certain Claims as Satisfied in Full (D.I. 2902).

termination and post-petition. He attached lists of phone records to his Response, showing the post-petition communications. He also attached a copy the Debtors' severance pay policy dated June 16, 2014, showing that the Debtors' former policy provided for a lump sum distribution of a severance benefit payment. A hearing to consider the Objection was held on May 24, 2016, at which Mangan appeared *pro se.*

For the reasons set forth below, the Objection will be overruled. Mangan's claim will be classified as a fourth priority claim under the Bankruptcy Code § 507(a)(4).

## BACKGROUND

Mangan worked as an advertising group manager for Associated Wholesalers, Inc. ("AWI") from June of 1999 until his termination on August 1, 2014.[4] His responsibilities included advertising planning, program execution, marketing campaigns, vendor promotion planning, media buying, budget control, and responsibility for the operation of twenty-eight major full-service supermarkets.[5]

By letter dated August 1, 2014, the Debtors terminated Mangan's employment (the "Termination Letter").[6] AWI had a policy offering full-time, non-union employees who were permanently laid off certain severance benefits based upon their years of continuous service.[7] The rates for terminated employees' severance benefits were as follows:

  (1) The employees who served fewer than two years were not eligible for severance benefits;

  (2) The employees who served between two and five years were eligible for two weeks of severance benefits; and

---

[4] Hearing Transcript, May 24, 2016 (D.I. 2976), at 9:12-25; Response (D.I. 2941).
[5] *Id.*
[6] Objection, ¶ 12.
[7] *Id.* ¶ 11.

>   (3) The employees who served more than five years were eligible to receive one week of severance benefits for every completed year of service up to a maximum of twenty weeks.[8]

According to the Debtors' policy, and as stated in the Termination Letter, Mangan was entitled to fifteen weeks of severance pay.[9] The Debtors paid nine weekly severance payments to Mangan prior to the petition date. The Debtors do not dispute that the amount of $8,693.70 remains unpaid.[10]

On September 9, 2014, the Debtors filed voluntary chapter 11 bankruptcy petitions. Between August 2, 2014, and October 16, 2014, the Debtors' employees and representatives contacted Mangan, through phone calls, text messages and emails, for assistance in continuing AWI's business operations.[11] The contacts related to ongoing requests for information on the location of AWI company records, computer files, procedures, location of hardcopy files, and advice regarding unfinished business from his time at AWI.[12]

Mangan argues that AWI's policy since 1997 provided for payment of severance benefits in a lump sum distribution, "after all obligations to the Company have been met and at a time when final termination pay is rendered."[13] AWI changed its policy on July 30, 2014, to provide for payment of severance pay on a weekly basis.[14] Mangan says that he was not notified of the change in policy, but "obtained a copy of this revised policy through a secondary source."[15] Mangan alleges the change in policy was made on the same day that AWI finalized a plan to lay

---

[8] *Id.*
[9] POC 1825.
[10] Tr. 6:13-17.
[11] Tr. 10:2-25.
[12] Tr. 9:15-18.
[13] POC 1825. *See* Response, Ex. D.
[14] POC 1825, Ex. E.
[15] POC 1825.

off 59 employees, including him.[16] At the hearing, the Debtors conceded that, under the old severance policy, Mangan would have received his severance pay in a lump sum distribution.[17]

## DISCUSSION

Mangan opposes reclassification of his severance benefit claim from a priority claim to a general unsecured claim. Further, in his Response, he argues that his severance benefit claim should be a secured claim because he continued to work for AWI post-petition. He did not address any specific basis of authority for his argument, beyond checking the box for a § 507(a)(4) claim on POC 1825.

(1) <u>The Severance Benefit Claim is a Priority Claim under Bankruptcy Code § 507(a)(4).</u>

Section 507(a)(4) provides that priority status will be granted to allowed unsecured claims for "wages, salaries or commissions, including vacation, severance, and sick leave pay" earned by an individual "within 180 days before the date of the filing of the petition," but "only to extent of $12,850."[18]

The Debtors argue that the terminated employees earn one week of severance pay as they complete a year of service on the anniversary date of their employment. This method of calculation derives from the severance policy itself, under which an employee in Mangan's position is eligible for an additional week of severance pay (paid at the employee's base rate at the time of layoff) only upon each year of completed service. The Debtors further argue that, if a terminated employee completes a year of service within 180 days of the petition date, then that employee earned one week of severance pay that is entitled to priority status; for any terminated

---

[16] *Id.*
[17] Tr. 6:22-23.
[18] 11 U.S.C. § 507(a)(4). The dollar amount is adjusted in 3-year intervals pursuant to 11 U.S.C. § 104.

employee whose work anniversary does not fall within 180 days of filing, no priority status is accorded to the employee's severance benefit claim.

The Debtors agree that Mangan completed a year of service in June 2014 and, since that is within 180 days of the petition date, Mangan was entitled to priority status for one week of his severance pay claim. Since the Debtors paid Mangan for nine weeks of severance pay, the Debtors contend that the amount of severance pay remaining due is a general unsecured claim.

Courts have reached varying conclusions on the question of when an employee earns his or her severance payment. Several courts have held that severance pay, like vacation pay, is "earned" over the course of the employee's service because "the severance pay is a component of compensation . . . the amount of severance pay [based on service length] entitled to priority under § 507(a)(4)(A) is that portion of the total severance pay attributable to the priority prepetition period."[19]

In *In re Garden Ridge Corp.*, I held that in a "severance pay for termination without cause" situation, the employee's "right to receive severance payments was 'earned' no earlier than upon termination of employment . . . ."[20] Specifically, because the debtor incurred contingent obligations when it entered into the employment agreements, and "the contingencies actually occurred when the Debtor exercised its right to terminate the claimants' respective

---

[19] *In re Ellipsat, Inc.*, 480 B.R. 1, 10 (Bankr. D. D.C. 2012) (discussing that traditionally courts have concluded that an employee "earns" his severance pay over time under the severance policy) (citing *In re Russell Cave Co., Inc.*, 248 B.R. 301, 304-05 (Bankr. E.D. Ky. 2000), *In re Yarn Liquidation, Inc.*, 217 B.R. 544, 546 (Bankr. E.D. Tenn. 1997), *Roeder v. United Steelworkers of Am. (In re Old Electralloy Corp.)*, 167 B.R. 786, 796 (Bankr. W.D. Pa. 1994), *In re Jeannette Corp.*, 118 B.R. [327, 330 (Bankr. W.D. Pa. 1990)], and *In re N.W. Eng'g Co.*, 43 B.R. 603, 605 (Bankr. E.D. Wis. 1984)).

[20] *In re Garden Ridge Corp.*, 2006 WL 521914, at *1-2 (Bankr. D. Del. Mar. 2, 2006). In 2006, Bankruptcy Code § 507(a)(3) governed the priority of severance pay claims, and the Code stated that the "wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual" within 90 days before the date of the filing of the petition was a priority claim.

employment agreements," the severance pay was earned upon termination.[21] In *Garden Ridge*, unlike the matter before us, the terminated employees' entitlement to severance payments did not accrue over time, but were tied to the employees' base pay at the time of termination. But the contingency in each case, termination, is what triggers the right to payment: Mangan's <u>eligibility</u> for severance accrued over time, but he earned or became entitled to severance only upon termination of his employment.[22] My decision in *Garden Ridge* informs the result here.[23] Mangan's severance benefit claim is entitled to priority treatment under § 507(a)(4). Mangan earned his severance payment within "180 days of the date of the filing of the petition," and the amount of the severance is within the $12,475 statutory cap; therefore, it is a priority claim.

(2) <u>The Severance Benefit Claim is not an Administrative Expense Priority Claim.</u>

According to 11 U.S.C. § 503(b)(1)(A), the administrative expenses include "the actual, necessary costs and expenses of preserving the estate including . . . wages, salaries, and commissions for services rendered after the commencement of the case . . . ." Mangan argues that AWI should compensate him for his severance claim as an administrative claim because he

---

[21] *Id.*

[22] *Matson v. Alarcon*, 651 F.3d 404 (4th Cir. 2011). The *Matson* Court decided that "[t]he purpose of such severance compensation is to 'alleviate the consequent need for economic readjustment' and 'to recompense [the employee] for certain losses attributable to the dismissal.'" (citing *Straus-Duparquet, Inc. v. Local Union No. 3, Int'l Bhd of Elec Workers*, 386 F.2d 649, 651 (2d Cir. 1967)). The *Matson* Court held "that an employee 'earns' the full amount of 'severance pay' on the date the employee becomes entitled to receive such compensation, subject to satisfaction of the contingencies provided in the applicable severance compensation plan." *Matson*, 61 F.3d at 409. The *Matson* Court also distinguished cases (including the Third Circuit's decision in *Roth American*) which considered the treatment of claims for severance payment as *administrative expense* priority, deciding that § 503(b)(1)(A)'s provisions are materially different from § 507(a)(4); for administrative claim priority, the court must calculate the value of services rendered in a period of time after the debtor files a bankruptcy petition. *Matson*, 61 F.3d at 410. *See In re Roth American, Inc.*, 975 F.2d 949 (3d Cir. 1992). Therefore, *Roth American* addresses a different issue than the one before me and the reasoning is not applicable here.

[23] Curiously, I was unable to find any reference by Debtor's counsel either in the Objection or the hearing record to *Garden Ridge*.

rendered post-petition services.[24] Mangan believed that he "was compelled to continue to honor the request for information and cooperation of the Debtor," and that his work was in the normal operation of the Debtors' business.[25] He further elaborates that there was "somewhat of an obligation to feel compelled to do so" because of the many responsibilities that he previously performed.[26] He also states that he felt compelled to do so "because a lump sum distribution [of his severance benefits] was not made."[27] Mangan admits that he had no express agreement with AWI regarding the services he provided after the termination of his employment. AWI admits that Mangan provided assistance after his termination, but claims that their employer-employee relationship ended on August 1, 2014.

Here, Mangan's severance payment claim derives from his pre-petition work over the past fifteen years. The fact that he may have continued to provide services to AWI after the filing of the petition was not a basis for his severance payment. AWI did not enter into any post-petition agreement with Mangan; neither did AWI promise to render the severance pay in exchange for his post-petition services. Post-petition, Mangan was not AWI's employee, but volunteered for the services he provided. A volunteer may not receive compensation from the Debtors. "The services for which compensation is requested should have been performed pursuant to appropriate authority under the Code and in accordance with an order of the court.

---

[24] Tr. 11:2.
[25] Tr. 10:17-18; 11:1-2, 11-12.
[26] *Id.* 11:14-17.
[27] *See* Response. This argument has no force legally, but it is understandable that Mangan did not know why he was not given the lump-sum payment to which he believed he was entitled or what might be required of him to prompt the payment if, as he states in POC 1825, he was never notified of the change in the severance policy from lump-sum distribution to payment on a weekly basis.

(3) <u>The Severance Benefit Claim is not a Secured Claim.</u>

Mangan also argues that his severance benefit claim is a secured claim because AWI initiated contact with him numerous times after terminating his employment by letter, which (he believes) demonstrates that AWI retained his services.[28] It is clear that Mangan, who is representing himself, does not understand the nature of a secured claim and the record supports no basis upon which I can conclude that his claim is secured.

## CONCLUSION

For the reasons set forth above, I conclude that Mangan's severance benefit claim, totaling $8,693.70, should be classified as a priority claim under Bankruptcy Code § 507(a)(4). As I confirmed the Debtors' plan in this chapter 11 case on September 30, 2016 (D.I. 3679), Mangan's claim should be paid in accordance with the treatment of priority claims under the plan.

An appropriate order follows.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY COURT

DATED: October 19, 2016

---

[28] Response, at 3.