## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **ADI LIQUIDATION, INC.,** *et al.*,[1] | Case No. 14-12092 (KJC) |
| Debtors. | (Jointly Administered) |
| | D.I. 2691, 3054 |

### OPINION[2]

**BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the Debtor AW Liquidation, Inc.'s (f/k/a Associated Wholesalers, Inc.) ("AWI") Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (Made Applicable by Fed. R. Bankr. P. 7056 and 9014) With Respect to Bimbo Bakeries USA, Inc.'s ("BBU") Motion for the Allowance and Payment of Administrative Expenses (D.I. 2691) under 11 U.S.C. § 503(b)(9) ("AWI's Motion for Summary Judgment") (D.I. 3054). BBU filed an administrative priority claim (the "BBU Administrative Priority Claim") for the value of unpaid goods allegedly delivered to AWI and customers of AWI (the "AWI Customers") during the twenty day period prior to AWI's petition date. AWI contends that the BBU Administrative Priority Claim should be reclassified as a general unsecured claim.

---

[1] The Debtors in these chapter 11 cases are: AWI Delaware, Inc.; Associated Wholesalers, Inc.; Nell's, Inc.; Co-Op Agency Inc.; Associated Logistics, Inc.; White Rose Inc.; Rose Trucking Corp.; WR Service Corp.; WR Service II Corp.; WR Service V Corp.; and White Rose Puerto Rico, LLC.

[2] This Opinion constitutes the findings of fact and conclusions of law, as required by Fed. R. Bankr. P. 7052. This Court has jurisdiction to decide this claim objection pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Venue is proper in this judicial district under 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested is 11 U.S.C. § 503(b)(9).

In its Answering Brief in opposition to AWI's Motion for Summary Judgment, BBU argues that any determination is contingent upon material facts in dispute. I disagree.[3] For the reasons set forth below, the Court will grant, in part, AWI's Motion for Summary Judgment to disallow the BBU Administrative Priority Claim with respect to all deliveries made to non-debtor third parties. In addition, the Court will deny, in part, AWI's Motion for Summary Judgment with respect to the claim for administrative priority in connection with the goods delivered to Debtor NK Liquidation, Inc. (f/k/a Vida Nell's, Inc.); however, that portion of the claim is neither allowed nor disallowed by virtue of this Opinion.[4]

## BACKGROUND

AWI was a cooperative food distributor that provided distribution and retail services to member retailers (the "AWI Members").[5] BBU is a manufacturer and distributor of freshly baked goods. BBU and AWI participated in a business arrangement in which AWI Members would order goods from BBU, and BBU would deliver the goods directly to the AWI Member.[6] AWI Members

---

[3] I find that further discovery regarding nature and duration of the relationship between the parties, AWI's involvement in the relationship between BBU and AWI Customers, and the contractual obligations in the PSAs (defined *infra*) between AWI and AWI Customers is unnecessary. These issues are not material to determine whether AWI "received" goods delivered directly to non-debtor third parties under the meaning of section 503(b)(9).

[4] Specifically, Bimbo Bakeries USA, Inc.'s Memorandum of Law in Support of its Motion for the Allowance and Payment of Administrative Expenses Under 11 U.S.C. § 503(b)(9) and in Opposition to the Debtors' Objection to Such Claim (the "BBU Motion") (D.I. 2691) states, "[t]he 503(b)(9) Claim can be broken down into three parts:
- $916,452.48 worth of goods constructively received by AWI;
- $30,450.88 worth of goods actually received by debtor Vida Nell's Inc.;
- $15,634.51 worth of goods actually received by debtor Vida Nell's Inc.

*See generally* [BBU] Proof of Claim No. 263." BBU's Administrative Expense Memorandum ¶ 24.

[5] AWI provided these services both to its own entities, and to non-Debtor third party entities. For the purposes of this Opinion only, I will refer to all entities that purchased goods via the "Bill Thru Program" (defined *infra* n. 8) as "AWI Members." In addition, I will refer to the non-debtor AWI Members as "AWI Customers."

[6] Decl. of Basil Klipa ¶ 12, D.I. 2692.

paid AWI for the goods delivered by BBU.[7] AWI then remitted payment to BBU on a weekly basis for its deliveries to AWI Members, less a percentage of the invoice amount that AWI deducted and retained.[8]

On September 9, 2014 (the "Petition Date"), the Debtors filed voluntary petitions for relief under title 11 of the United States Code (the "Bankruptcy Code"). BBU subsequently filed two proofs of claim against AWI. On October 14, 2014, BBU filed its first proof of claim (no. 242) (the "General Unsecured Claim") asserting a general unsecured claim in the amount of $1,400,146.67. This figure represents the price of unpaid goods sold prepetition to AWI and AWI Members. On October 16, 2014, BBU filed its second proof of claim (no. 263) (the "Administrative Priority Claim"), in which BBU asserts an administrative priority claim in the amount of $962,537.87. The Administrative Priority Claim represents the portion of the General Unsecured Claim that comprises the value of goods allegedly sold and delivered to AWI and AWI Members within twenty days of the Petition Date.

On February 5, 2016, BBU filed its Motion for the Allowance and Payment of Administrative Expenses (the "BBU Motion"), attaching in support of the BBU Motion the Declaration of Basil Klipa (the "Klipa Declaration"). Mr. Klipa identified himself as the Key Account Manager who oversaw the BBU account with AWI and AWI Members. The Klipa Declaration described the mechanics of the relationship among BBU, AWI, and AWI Members. According to Mr. Klipa, AWI was involved in important aspects of the relationship between BBU and AWI Members, including pricing, incentive programs, customer account maintenance,

---

[7] Decl. of Basil Klipa ¶ 12, D.I. 2692.
[8] Decl. of Basil Klipa ¶ 12, D.I. 2692. The parties refer to this arrangement as the "Bill Thru Program."

product promotions, handling member complaints and concerns, and negotiating vendor deals with BBU.[9]

On March 16, 2016, AWI filed an objection to BBU's Motion for the Allowance and Payment of Administrative Expenses (the "Objection"). In its Objection, AWI argues that BBU's Administrative Priority Claim must be denied, *inter alia*, because AWI never received—physically or constructively— the goods sent by BBU to AWI Customers. On March 22, 2016, BBU filed a reply (the "Reply") in further support of the Administrative Priority Claim. In its Reply, BBU contends that the integral role that AWI played in the cooperative and in AWI Member operations, as evidenced in the Klipa Declaration, demonstrated constructive receipt of the goods.[10]

On July 8, 2016, AWI filed its Motion for Summary Judgment, arguing that BBU has not, and cannot, provide sufficient facts to support a conclusion that AWI received goods from BBU, as required for an administrative priority claim under section 503(b)(9).

On August 2, 2016, and August 9, 2016, BBU and AWI, respectively, filed dueling briefs with respect to AWI's Motion for Summary Judgment. BBU, in its Answering Brief, says it obtained in third-party discovery sixty-four purchase and supply agreements (the "PSAs") between AWI and AWI Members that purportedly established "constructive receipt" by AWI. One of the PSAs, for example, provided that AWI will "sell and supply" retail goods to the AWI Member and that the AWI Member agrees to "utilize AWI as its primary wholesale supplier for its retail supermarket business." BBU contends that the PSAs prove constructive receipt of the goods because AWI acquired some right, title or interest in BBU's goods that were delivered to the AWI

---

[9] Decl. of Basil Klipa ¶ 13-14, D.I. 2692.
[10] The parties do not dispute that the goods were not physically received by AWI. Therefore, the only issue to be determined here is whether the goods were constructively received by AWI, satisfying the requirement for an administrative priority claim under section 503(b)(9).

4

Members subject to a PSA. AWI denies the importance of the PSAs, claiming that the agreements did not pertain to sales from third-party vendors (such as BBU), were not evidence of any actual sales from AWI to AWI Members, nor were evidence of receipt of any goods by AWI. While not submitted in evidence, it appears as if the purpose of the PSAs frame a general relationship between AWI and its Members, but BBU is not a party to the PSAs.

## STANDARD

Rule 56 of the Federal Rules of Civil Procedure, made applicable by Federal Rule of Bankruptcy Procedure 7056 and 9014(c), provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[11] At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.[12]

The moving party bears the burden of establishing the absence of a genuine dispute as to a material fact.[13] When the nonmoving party bears the burden of persuasion at trial, the moving party "may meet its burden . . . by showing that the nonmoving party's evidence is insufficient to carry that burden."[14]

---

[11] Fed. R. Civ. P. 56(a).
[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[13] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (quoting Fed. R. Civ. P. 56(c)) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.").
[14] *Foulk v. Donjon Marine Co., Inc.*, 144 F.3d 252, 258 n.5 (3d Cir. 1998) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

Once the moving party has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."[15] Summary judgment cannot be avoided by introducing only "a mere scintilla of evidence,"[16] or by relying on "conclusory allegations, improbable inferences and unsupported speculation."[17] "Brash conjecture coupled with earnest hope that something concrete will materialize, is insufficient to block summary judgment."[18]

Substantive law determines which facts are material; only disputes over facts that might affect the outcome of the suit will preclude summary judgment.[19] Moreover, a dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[20] The Court must resolve all doubts and consider the evidence in the light most favorable to the nonmoving party.[21]

---

[15] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).
[16] *Sarko v. Penn-Del Directory Co.*, 968 F.Supp. 1026, 1031 (E.D. Pa. 1997) (citation omitted), *aff'd* 189 F.3d 464 (3d Cir. 1999).
[17] *J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir. 1996) (citation omitted).
[18] *Id.* (quoting *Dow v. United Bhd. of Carpenters*, 1 F.3d 56, 58 (1st Cir. 1993)).
[19] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[20] *Id; see also Delta Mills, Inc. v. GMAC Commercial Fin., LLC (In re Delta Mills, Inc.)*, 404 B.R. 95, 105 (Bankr. D. Del. 2009) (holding that an issue is genuine "when reasonable minds could disagree on the result.").
[21] *Anderson*, 477 U.S. at 255 ("[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").

## DISCUSSION

Bankruptcy Code section 503(b)(9) provides that, after notice and a hearing, the bankruptcy court shall allow, as administrative expenses, "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of the debtor's business."[22] Administrative expenses receive priority over other unsecured claims pursuant to Bankruptcy Code section 507(a)(2).

For AWI to prevail on its Motion for Summary Judgment, AWI must show that BBU will be unable, as a matter of law, to satisfy at least one of the three requirements of section 503(b)(9). Accordingly, if BBU cannot allege facts that support that (1) goods were received by AWI within 20 days before the petition date, (2) goods were sold to AWI, and (3) the goods were sold in the ordinary course of business, then AWI's Motion for Summary Judgment will succeed. The key issue to be considered here is whether AWI "received" goods from BBU within the meaning of section 503(b)(9).

The term "received" is not defined in the Bankruptcy Code.[23] In analyzing the meaning of the term "received" in section 503(b)(9), decisional law and legislative history suggest that it have

---

[22] 11 U.S.C. § 503(b)(9).
[23] *In re Momenta, Inc.*, 455 B.R. 353, 357 (Bankr. D.N.H. 2011) ("The phrase "received by the debtor" is not a term of art nor is it a defined phrase in the Bankruptcy Code").

7

the same meaning as "received" in section 546(c), which governs reclamation.[24] Courts have also looked to the Uniform Commercial Code ("UCC") for guidance in defining the term "receipt."[25]

The contracting parties are both incorporated and did business in Pennsylvania. In their submissions, the parties assumed that either Pennsylvania or Delaware law applied. For this purpose, there is no difference between the applicable UCC provisions. UCC § 2-103 defines receipt as taking "physical possession" of goods.[26] Possession may be actual or constructive, and occurs when the seller can no longer stop delivery and is left only with the remedy of reclamation.[27] UCC § 2-705(2) sets forth four events that terminate a seller's right to stop goods in transit.[28] Only one of those events involves the buyer taking physical possession of the goods.[29] The other three events involve forms of constructive possession because, under UCC § 2-702(2), the right of reclamation arises only when an insolvent buyer has "received [the] goods."[30] However, courts

---

[24] *In re Momenta, Inc.*, 455 B.R. at 357 (Bankr. D.N.H. 2011) ("This Court agrees with the rationale of *Circuit City* and holds that the term "received" in § 546(c) is the equivalent of "receipt" in the UCC, and the term "received" in § 503(b)(9) shall be interpreted identically.") (citing *In re Circuit City Stores, Inc.*, 432 B.R. 225, 228 (Bankr. E.D.Va. 2010)); *see In re NE Opco, Inc.*, 501 B.R. 233, 253 (Bankr. D. Del. 2013) ("There is no reason why the words in one section in a code should have any different meaning ascribed to them than nearly identical words appearing in other sections of the same code. Indeed, they are to be interpreted consistently.").

[25] *In re Circuit City Stores, Inc.*, 432 B.R. 225, 228 (Bankr. E.D. Va. 2010); *In re Pridgen*, 2008 WL 1836950, at *4 (Bankr. E.D.N.C. Apr. 22, 2008); *In re R.F. Cunningham & Co.*, 2006 WL 3791329, at *2 (Bankr. E.D.N.Y. Dec. 21, 2006).

[26] *See* UCC § 2-103. Because Pennsylvania and Delaware have adopted the definition of "receipt" provided in the UCC, I will look to court cases that have interpreted the definition for furthering understanding of its meaning.

[27] *In re Momenta, Inc.*, 455 B.R. 353, 359 (Bankr. D.N.H. 2011); *Matter of Marin Motor Oil, Inc.*, 740 F.2d 220, 225 (3rd Cir. 1984).

[28] UCC § 2-705(2) ("As against such buyer the seller may stop delivery until:

(1) receipt of the goods by the buyer;
(2) acknowledgment to the buyer by any bailee of the goods, except a carrier, that the bailee holds the goods for the buyer;
(3) such acknowledgment to the buyer by a carrier by reshipment or as warehouseman; or
(4) negotiation to the buyer of any negotiable document of title covering the goods.")

[29] UCC § 2-705(2)(a).

[30] UCC § 2-702.

have held that constructive possession in reclamation cases occurs only when the goods are delivered to a third party who is a bailee for the debtor.[31]

It is undisputed in the present case that the goods delivered to AWI Customers were not in AWI's actual physical possession; nor were AWI Customers bailees for AWI. Therefore, BBU faces a roadblock to establish receipt under UCC § 2-103 or Bankruptcy Code § 503(b)(9). BBU seeks to broaden the definition of constructive receipt to include situations, as here, when a buyer/debtor is so integrated into the transaction that there is an indivisible relationship between the buyer/debtor and third-party recipient of goods, constituting constructive possession. Specifically, BBU contends that because AWI controlled most aspects of the day-to-day business transactions between AWI Customers and BBU, operated the centralized billing program to facilitate payment from AWI Customers to BBU, as well as a myriad of other operational support services, AWI constructively received the goods delivered to AWI Customers.

Should the definition of constructive receipt be expanded to include deliveries to non-bailee third parties when the debtor is substantially involved in facilitating transactions between a third party and the vendor? It should not. Courts have held that an arrangement whereby goods are delivered directly to a non-debtor, non-bailee, third party does not give rise to constructive possession and, therefore, there can be no valid administrative priority claim under section 503(b)(9).[32]

---

[31] See *In the Matter of Marin Motor Oil, Inc.*, 740 F.2d 220, 225-26 (3rd Cir. 1984); *Mayer Pollock Steel Corp. v. London Salvage & Trading Co., Ltd.*, 157 B.R. 952, 962 (Bankr. E.D. Pa. 1993); *Morrison Indus., L.P. v. Hiross, Inc.*, 175 B.R. 5, 8 (Bankr. W.D.N.Y. 1994). UCC § 7-102(a)(1) defines the term "Bailee" as "a person that by a warehouse receipt, bill of lading, or other document of title acknowledges possession of goods and contracts to deliver them."

[32] See *In re World Imports*, 516 B.R. 296, 300 (E.D. Pa. 2014) ("goods delivered under drop-shipment arrangements were not "received" by the Debtor for purposes of § 503(b)(9)"); *In re Momenta, Inc.*, 455 B.R. 353 (Bankr. D.N.H. 2011).

The facts before me are comparable to cases in which courts have examined the validity of an administrative priority claim under section 503(b)(9) in the context of "drop-ship" transactions. In a "drop-ship" transaction, a buyer purchases goods from a vendor, but the goods are delivered directly from the vendor to a third party to fulfill a separate sale agreement between the buyer and the third party.

The court in *In re World Imports* recently considered the validity of an administrative priority claim under section 503(b)(9) in a "drop-ship" transaction. In *In re World Imports*, a wholesale vendor of furniture sought an administrative priority claim under section 503(b)(9), in part, for the value of furniture delivered to the debtor's customers in "drop-ship" transactions.[33] In denying the claim, the court held that the claim failed because the goods had not been received by the debtor. Specifically, the court stated, "a drop-shipment to a debtor's customer does not constitute even constructive possession for purposes of § 503(b)(9)."[34]

The arrangement in the present case, although not a "drop-ship" transaction *per se*, is sufficiently analogous to justify adopting the reasoning of "drop-ship" cases to determine the matter before me. As in a "drop-ship" case, the debtor (AWI) paid the vendor (BBU) to deliver goods directly to third parties (AWI Members). The third parties (AWI Members) subsequently paid the debtor (AWI) to fulfill a separate agreement. Furthermore, the connection here between the debtor (AWI) and the vendor (BBU) is more remote than those in the "drop-ship" cases. Unlike a "drop-ship" transaction in which the debtor orders the goods, the third parties here (AWI Members) ordered directly from the vendor (BBU).[35] This more strongly supports denial of an administrative priority claim under section 503(b)(9).

---

[33] *In re World Imports*, 516 B.R. at 298.
[34] *Id.* at 300 (citing *In re Momenta, Inc.*, 455 B.R. 353 (Bankr. D.N.H. 2011)).
[35] I have also considered UCC § 2-705, comment 2, which states "'[r]eceipt by the buyer includes receipt by the buyer's designated representative, the sub-purchaser, when shipment is made direct to him and the

AWI also makes a strong argument that the second section 503(b)(9) element—requiring that the goods were sold to AWI— has also not been satisfied. The undisputed facts before me reveal that, not only were the goods *received* by third parties, but also that the sales themselves were made to third parties, not to AWI. Specifically, the Klipa Declaration contains the following allegations, each of which describe the sales as being to the AWI Customers:

- "AWI paid [BBU] the value of the *goods delivered to AWI Customers.*"[36]
- "AWI fixed the payment terms *for sales to the AWI Customers.*"[37]
- "[BBU] billed AWI weekly for *all sales to the AWI Customers.*"[38]
- BBU describes these sales as "transactions between [BBU] and the AWI Customers."[39]
- "AWI was responsible for negotiating promotions for [BBU'] products *sold to the AWI Customers.*"[40]

These facts, asserted on behalf of BBU in support of its Motion, indicate that the goods were sold to and received by the AWI Customers, not AWI.

However, despite to whom the goods were sold, BBU cannot, as a matter of law, satisfy the requirement that AWI must have "received" the goods with respect to deliveries made to non-debtor third parties. It is undisputed that AWI did not take actual physical possession of the goods shipped by BBU directly to non-debtor third parties.[41] Because AWI did not take actual or

---

buyer himself never receives the goods. It is entirely proper under this Article that the seller, by making such direct shipment to the sub-purchaser, be regarded as acquiescing in the latter's purchase and as thus barred from stoppage of the goods as against him." Upon first glance, this comment may seem to be at odds with my determination; however, the "buyer" in this case is not AWI. The buyers here are the AWI Members, who ordered the goods, and received the goods.

[36] Decl. of Basil Klipa ¶ 12, D.I. 2692 (emphasis added). Mr. Klipa was the Key Account Manager who oversaw the BBU account with AWI and AWI Members.
[37] Decl. of Basil Klipa ¶ 12, D.I. 2692 (emphasis added).
[38] Decl. of Basil Klipa ¶ 12, D.I. 2692 (emphasis added).
[39] Decl. of Basil Klipa ¶ 13, D.I. 2692 (emphasis added).
[40] Decl. of Basil Klipa ¶ 18, D.I. 2692 (emphasis added).
[41] BBU's Answering Br., at 17, August 2, 2016.

constructive possession of the goods at issue, BBU is not entitled to an administrative priority claim under section 503(b)(9) for the value of goods delivered to non-debtor third parties.

### CONCLUSION

For the reasons set forth herein, AWI's Motion for Summary Judgment is granted, in part, as to BBU's section 503(b)(9) claim with respect to all goods delivered directly to non-debtor third parties. The Court will deny, in part, AWI's Motion for Summary Judgment with respect to the claim for administrative priority in connection with the goods delivered to Debtor NK Liquidation, Inc. (f/k/a Vida Nell's, Inc.); however, that portion of the claim is neither allowed nor disallowed by virtue of this Opinion. An appropriate order follows.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY COURT

DATED: June 22, 2017